# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,                                          Case No. 1:16-cv-284

                    Plaintiff,                        Dlott, J.
         v.                                           Bowman, M.J.

OHIO DEPARTMENT OF
TRANSPORTATION, et al.,

                    Defendants.

## REPORT AND RECOMMENDATION

This case involves competing claims for funds ("Funds") currently held by this
Court.  The Internal Revenue Service ("IRS") seeks the Funds in partial payment of a
tax bill, while Plaintiff Fidelity and Deposit Company of Maryland ("F&D") asserts that it
is entitled to the same Funds, because the identified taxpayer never acquired any
property interest in the Funds that would be subject to an IRS levy.  The case has been
referred to the undersigned magistrate judge for all pretrial proceedings.  (Doc. 31).

Currently pending are the parties' cross-motions for summary judgment.  For the
following reasons, I recommend that F&D's motion be GRANTED and that the cross-
motion of the IRS be DENIED.

## I.      Background

Plaintiff F&D filed this declaratory judgment action seeking a judgment that the
Funds were wrongfully levied upon by the IRS and instead belong to F&D.[1]  (Doc. 12 at
¶47; *see also generally* ¶¶38-48).  F&D claims entitlement to the Funds based upon its
performance as surety on bonds issued to the delinquent taxpayer, Cosmos Industrial

---
[1]This Court has original jurisdiction over this action for wrongful levy under 28 U.S.C. § 1346(e).

Services, LLC ("Cosmos"). The Funds, in the amount of $589,049.49, were deposited into the registry of this Court through a supplemental interpleader action after the IRS filed a Notice of Tax Levy against the third-party custodian of the Funds.[2]

F&D's surety bonds relate to contracts that were awarded to Cosmos by the Ohio Department of Transportation ("ODOT") for public road and bridge projects throughout Ohio.[3] The total amount of the Funds constitutes far less than the tax bill or the amount paid out by F&D as surety; thus, both IRS and F&D seek the Funds to recoup only a portion of their respective losses.

## II.    Findings of Fact

Both parties have submitted proposed undisputed findings of fact in this case. To the extent any dispute exists, all reasonable inferences have been drawn in favor of the IRS, as the party against which summary judgment is recommended.

Beginning in 2013, Cosmos failed to remit its Form 941 payroll taxes to the IRS as required by federal law. Ultimately, delinquent taxes were assessed against Cosmos covering periods ending on December 31, 2013, December 31, 2014, and June 30, 2015 in amounts that presently total more than $1.5 million. Notices of Federal Tax Liens were filed by the IRS on January 6, 2015, September 3, 2015, and September 30, 2015. All three tax liens were submitted to the Cuyahoga County Office of Fiscal Officer, where they were recorded against Cosmos.

Beginning in 2012 and continuing until 2015, F&D issued both payment bonds and separate performance bonds in conformity with public works contracts that Cosmos

---

[2]This Court previously granted the motion of the custodians, two Ohio Defendants to pay the Funds into the Registry of this Court in exchange for dismissal from this litigation, pursuant to Rules 67(a), Fed. R. Civ. P. and Local Rule 77.2(b)(2). (*See* Docs. 41, 42).

[3]While a nominal Defendant, Cosmos has not appeared in this action. Lisa Barbacci is the appointed Receiver for Cosmos.

secured to perform work for ODOT. (*See* Docs. 45-15, 45-16); *see also generally Beasley v. Monoko, Inc.*, 195 Ohio App.3d 93, 96 958 N.E.2d 1003, 1005 (Ohio Ct. App. 2011) (explaining that payment bonds ensure that all laborers, suppliers, and subcontractors are paid in full, while performance bonds ensure that the work is completed to Ohio's satisfaction). F&D issued its bonds based in part upon false and misleading financial information provided to F&D by Cosmos.[4] F&D also entered into a separate indemnity agreement with Cosmos.

The bonded projects are the sole source of Funds currently on deposit with this Court. Seven ODOT Projects generated the Funds, identified by Project numbers 120629, 140182, 140186, 140244, 140540, 150154, 150214, where the first two digits represent the year in which the contract was executed.

Under the terms of the contracts, ODOT was to make monthly progress payments to Cosmos based upon the amount of work deemed to have been completed by the state's engineer. ODOT required the submission of periodic Pay Applications to support those payments.

By 2015, in addition to failing to pay its employment taxes to the IRS, Cosmos had failed to pay a number of the projects' sub-contractors and suppliers. Beginning on August 7, 2015 and continuing through September 29, 2015, those unpaid entities served ODOT with thirteen notices under Ohio R.C. § 1311.26, a state law that allows the claimant to claim "a lien upon the unpaid portion of the contract" between the prime contractor and the State of Ohio on any public project ("mechanic's lien"). The state law ensures that work on public projects is completed without the disruption that otherwise

---

[4]The president of Cosmos testified that she submitted an altered and fictitious financial statement to F&D for the period ending December 31, 2013 that eliminated any reference to the non-payment of taxes, or the non-payment by Cosmos of certain mandated fringe benefits.

could ensue if unpaid subcontractors and suppliers elected to stop their work. Upon receipt of the notices under R.C. §1311.26, ODOT was required to retain or withhold payment from sums that would otherwise be payable to the principal contractor, an amount that equaled but did not exceed the total amount of the claims. *See* R.C. §1311.28 (mandating that, upon receipt of "the affidavit required by section 1311.26 of the Revised Code, the public authority shall detain" the amount of the claim or claims).

Upon receipt of affidavits verifying claims that totaled $553,590.71, ODOT withheld that amount from payment on Payment Applications submitted by Cosmos dating from August 2015. (Doc. 45-20). Pursuant to the referenced Ohio law, ODOT segregated the funds and placed them into a separate bank or escrow account.

Because ODOT received federal funding from the Federal Highway Administration, ODOT also had a federal contractual obligation to withhold funds otherwise payable to a contractor to ensure compliance with Federal Highway Administration wage and fringe benefit provisions. The federally mandated contract provisions included multiple elements concerning the periodic payment of both payments for wages and contributions for fringe benefits under the Davis-Bacon Act. *See* 40 U.S.C. § 3141, *et seq.* Those provisions included the following:

- The contracting agency shall upon its own action or upon written request of an authorized representative of the Department of Labor withhold or cause to be withheld from the contractor under this contract … so much of the accrued payments or advances as may be considered necessary to pay laborers and mechanics … employed by the contractor or any subcontractor the full amount of wages required by the contract.

- If the contractor or subcontractor fails to submit the required records or to make them available, the Federal agency may, after written notice to the contractor [or the contracting agency or the State's DOT]…, take such action as may be necessary to cause the suspension of any further payment, advance or guarantee of funds.

29 C.F.R. §§ 5.5(a)(2) and (a)(3); *see also* 40 U.S.C. §3142(c)(3).

Due to the discovery by September 1, 2015 that Cosmos had not paid the federally mandated fringe benefits, ODOT withheld additional amounts under the Davis-Bacon Act. Although a spreadsheet originally provided by ODOT in discovery identified the retained amount of fringe benefits as totaling $71,756.34, (*see* Doc. 45-20), F&D's trial counsel has attested, based upon the supplemental deposition testimony of Danette Shuler of ODOT, that ODOT withheld a total of $458,833.76 for fringe benefits on 8 projects.[5] (Doc. 56-1 at 3).

After September 1, 2015, Cosmos never made any payments that would have permitted ODOT to release any of the payments retained under Ohio law or under the Davis-Bacon contractual provisions to Cosmos. ODOT later agreed to release the funds, but only after F&D provided assurances that it had paid all claims.

On or about September 1, 2015, Cosmos alerted F&D that it was no longer able to meet its payroll obligations and therefore was seeking assistance under the surety bonds. F&D agreed to provide financial assistance under the bonds, conditioned on the execution of Letters of Direction wherein Cosmos "irrevocably request[ed] that all payments due or to become due on account of the [bonded]" contracts be provided to F&D, directing ODOT to pay to F&D any funds that otherwise would become due to Cosmos. The Letters of Direction are dated September 8, 2015, and were transmitted to ODOT by letter dated September 15, 2015. (*See* Docs. 12-1 through 12-10).

Acting through its consultant, Nicholson Professional Consulting ("Nicholson"),

---

[5]The largest of the fringe benefit claims, in the amount of $175,000, arose from a project where Cosmos was not the main contractor but instead was a subcontractor to an entity holding the contract with ODOT. The remaining 7 projects were contracts on which Cosmos had directly contracted with ODOT. (*See* Doc. 56 at 15).

F&D established a Control Account in a bank in Georgia through which F&D funneled funds to pay for the continuation of work on the bonded projects after Cosmos requested F&D's assistance, and F&D began to perform as surety. Nicholson managed and controlled the Control Account, as to which Cosmos had no interest or influence. F&D deposited advances into the Control Account to complete the bonded work, including the payment of all claims and payment of basic operating expenses of Cosmos to maintain a skeletal crew in the main office to process payroll, and to review claims as they were submitted. The Control Account funds were not co-mingled with any other funds.

Between September 2, 2014 and November 19, 2015, F&D also paid all thirteen outstanding mechanics' liens that ODOT had received. (Doc. 43-4 at 4-5, ¶¶ 10-11). In addition, by March 1, 2016, F&D provided ODOT with the necessary and required evidence showing that it had paid all past-due and current fringe benefit payments. (Doc. 43-4 at ¶¶30-34). In total, F&D paid out more than $700,000 in fringe benefits, although the precise amount withheld by ODOT and attributable to past-due claims (as of September 1, 2015), versus ongoing fringe benefits contributions after September 1, 2015, is not clear from the record.

On September 2, 2015, a non-party to this litigation filed suit against Cosmos in state court, seeking the appointment of a Receiver to take possession of all of Cosmos's existing property and assets. (Doc. 51-1).[6] A state court Order dated October 2, 2015 placed Cosmos into Receivership, with the appointed Receiver retaining

_____

[6]The August 21, 2017 Third Report of Receiver states that Premier Bank and Trust ("Premier") was the entity that forced Cosmos into receivership. On September 2, 2015, judgment was entered in favor of Premier and against Cosmos and two other Defendants, jointly and severally, in the amount of $1,826,587.37 plus interests and costs. (Doc. 51-1 at 1).

"authority to operate and manage the subject business property, to collect all profits, rents and revenues generated there from to pay all necessary expense[s] relating to said management, subject to existing letters of direction with F&D." (Doc. 12-11 at 4).

Prior to Cosmos being placed into Receivership or the Letters of Direction being executed, substantial work remained to be performed on the bonded projects. Pursuant to its role as surety under the bonds, F&D provided funds to complete that remaining field work. After September 1, 2015, F&D took action to pay all outstanding lien and fringe benefit claims for which ODOT had retained payments, and paid for all ongoing wages, fringe benefits, and materials. In short, F&D provided 100% of all funding required to complete the contracted work, including but not limited to all ongoing labor and materials costs and payroll taxes for the employees of Cosmos.

Despite performing as surety on the bonds through payments that exceeded one million dollars for the bonded work, and notwithstanding the fact that Cosmos was in Receivership, F&D did not immediately take over all of the operations of Cosmos. Therefore, Cosmos remained listed as the general contractor on the bond for a period of time. However, Cosmos expended no funds for that bonded work after September 1, 2015. In order to continue the work, Cosmos relied solely on the performance of F&D as surety to advance all necessary funds to: "(a) pay the workers in the field to continue performing the work…; (b) to pay claims as they were reviewed and approved; (c) to satisfy lien claims filed against the funds payable on the bonded projects, (d) to pay fringe benefits…and (e) to pay selective expenses for the continued operation of the main office [of Cosmos] to retain key employees of Cosmos to review claims as they came in and to coordinate the work in the field." (Doc. 43-2 at ¶14, Affidavit; *see also*

Doc. 43 at 5, asserting that F&D advanced funds to pay for "field labor and selected office personnel to maintain Cosmos' operations for several months as the work on the Bonded Projects proceeded."). F&D continued to advance funds through the established Control Account from September 1, 2015 through January 2016, when F&D finally ceased advancing funds to Cosmos. (Doc. 43-4 at ¶16).

Consistent with its performance as surety for work conducted after September 1, 2015, F&D prepared Payment Applications and vouchers reflecting invoices dated between November 2015 and March 2016. Those Payment Applications had not been prepared or approved by ODOT at the time that F&D began to perform as surety. ODOT subsequently approved payment; the Funds at issue represent that payment.

On October 26, 2015, the IRS served its first Notice of Levy on ODOT, relating to taxes owed by Cosmos through December 31, 2013 in the amount of $294,026.89. The IRS served an Amended Notice of Levy on ODOT on December 28, 2015 for the additional 2014 an 2015 tax periods. The initial and amended Levies served on Ohio reflect a liability of $1,336,105.82. Upon being served with the Notice of Levy concerning Funds as to which the IRS sought its levy to attach,[7] ODOT withheld from F&D any further payments on the bonded projects for the referenced Pay Applications, notwithstanding the pre-existing Letters of Direction.[8]

ODOT did not declare Cosmos to be in default on the bonded projects until April

---

[7]A tax levy, unlike a tax lien, is a type of asset seizure. *See generally U.S. v. National Bank of Commerce*, 472 U.S. 713, 720 (1985); *Phelps v. U.S.*, 421 U.S. 330, 336-337 (1975).

[8]At one point after the levies were served on ODOT, ODOT erroneously and improperly released funds not to F&D, but to Cosmos. When F&D learned of that issue, it filed an objection with the state court overseeing the receivership, and Cosmos ultimately was found to be in contempt based upon the state court's determination that Cosmos had no interest in the funds under state law. (Doc. 43-4 at 11-12, ¶ 29). The state court's ruling is consistent with the conclusion of the undersigned that Cosmos had no property interest in payment on any Pay Application for work performed after September 1, 2015, which work was solely funded by F&D in exchange for the assignment of Cosmos's future contingent right to payment to F&D as its surety.

4, 2016. On that date, Ohio formally assigned to F&D, in its continuing role as surety, the remaining scope of work on two bonded projects that had yet to be completed. No portion of the Funds relates to work on the two projects completed by F&D *after* ODOT declared Cosmos in default on April 4, 2016.

As of April 4, 2016, ODOT declined to make payment to F&D on Payment Applications that had been submitted for work performed and approved after it received the notice of the IRS levy but before March 30, 2016. In short, the Funds represent payments for the discrete time period during which F&D was performing as surety under the bonds, but Cosmos remained listed as the general contractor.

### III.    Analysis and Conclusions of Law

### A.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id.* at 252.

The fact that the parties have filed cross motions for summary judgment in this case does not alter the applicable standard of review.

> The Court reviews each party's motion separately, determining, for each side, whether a judgment may be entered in accordance with the standards of Rule 56. Both motions must be denied if the Court finds that there is a genuine issue of material fact. If, however, there is no genuine issue and one or the other party is entitled to prevail as a matter of law, the Court will render judgment.

*Klaus v. Hilb, Rogal & Hamilton Co. of Ohio*, 437 F.Supp.2d 706, 732 (S.D. Ohio, 2006).

### B. F&D Bears the Burden of Proof In This Action

F&D initiated this lawsuit against the IRS in order to claim an interest in property that F&D alleges has been wrongfully levied upon. *See* 26 U.S.C. §7426(a). In addition to the general standard of review applicable under Rule 56, this Court must consider that F&D "bears the ultimate burden of showing that the levy was wrongful." *WRK Rarities, LLC v. United States*, 165 F. Supp.3d 631, 636 (N.D. Ohio 2016); *PBV, Inc. v. Rossotti*, 1999 WL 220123 at *1 (6th Cir. April 6, 1999)(Table). There is no dispute that F&D has carried its initial burden under the statute to show that it was not the entity against whom the tax is assessed, and that it has some legally cognizable interest in the Funds. *See generally*, 26 U.S.C. §7426. However, F&D also has the burden to show that the IRS wrongfully levied upon the Funds. *WRK Rarities, LLC v. United States*. 165 F. Supp.3d at 636; *see also McGinness v. U.S.*, *I.R.S.,* 90 F.3d 143, 145 (6th Cir. 1996).

F&D argues that: the levy was wrongfully placed on property in which Cosmos held no property interest whatsoever. The IRS may only levy property in which the

taxpayer has a property interest.  *See generally U.S. v. National Bank of Commerce*, 472 U.S. 713, 720 (1985).  Thus, the IRS cannot seize property wholly owned by a third party, where the delinquent taxpayer has no interest in that property.  Only if F&D carries its burden to show that the IRS wrongfully levied upon the Funds does the burden shift back to the IRS "to establish, by substantial evidence, a 'nexus' or 'connection' between the taxpayer and the property levied upon."  *WRK Rarities*, 165 F. Supp.3d a 636 (additional internal citation omitted).

For the reasons discussed below, I conclude that F&D has carried its burden to show that the levy was wrongfully placed by the IRS on property in which Cosmos had no interest.  I further conclude that the IRS has failed to rebut F&D's evidence to show some nexus that Cosmos had to the Funds, to which its levy could attach.  Resolution of this threshold issue is dispositive.  Because Cosmos possessed no property interest in the Funds under state law, there is no need to reach F&D's alternative arguments that the levy was invalid for other reasons; or that, even if Cosmos had some property interest, F&D's own property interest is superior.

## C.   Cosmos Acquired No Property Interest in Funds Generated After September 1, 2015

The IRS makes much of the fact that it filed and recorded tax liens against Cosmos beginning on January 6, 2015 in Cuyahoga County.  However, as with the subsequent levy served by the IRS on ODOT, the date of the IRS liens filed against Cosmos is irrelevant unless Cosmos held a property interest in the Funds.  Moreover, "[a] federal tax lien…is not self-executing."  *State Bank of Fraser v. U.S.* 861 F.2d 954, 958 (6th Cir. 1988).  In order to enforce its liens, the IRS had the option of either filing a lien-foreclosure suit against the delinquent taxpayer's property, or proceeding as it did in

this case, by administrative levy.

Unlike a foreclosure suit, an administrative tax levy requires no judicial intervention as long as there is no dispute that the property being levied upon, or seized, actually belongs to the delinquent taxpayer. In cases where a taxpayer's alleged property is held by a third party custodian, the notice of levy is served upon the custodian pursuant to 26 U.S.C. § 6332(a). Here, the IRS served its notice on October 26, 2015, asserting that its levy attached to the Funds then held by ODOT, based upon the alleged property interest of Cosmos in the Funds.

F&D argues that it has satisfied its burden of proof "to demonstrate its rightful entitlement" to the Funds, and that the IRS "has failed to meet its own burden of proof to establish that Cosmos ever had a property right" to the Funds. (Doc. 50 at 2). While the undersigned might quibble with F&D's articulation of the burden of proof,[9] I agree that Cosmos did not have any interest in the Funds either when the IRS first filed its liens against Cosmos, or when it served its notice of levy upon ODOT. Because Cosmos never held or acquired any property interest in the Funds, F&D has carried its initial burden to show that the levy was improper. *See generally Com. of Ky. For Benefit of United Pacific Ins. Co. v. Laurel County*, 805 F.2d 628, 632 (6th Cir. 1986) ("The plaintiff surety does not, and in our view could not, argue that the levy in this case was improper or unlawful if taxpayer Y & S had any interest in the progress payment to which the tax lien could have attached.").

---

[9]Arguably, the burden to establish that Cosmos had some form of property interest in the Funds does not shift to the IRS unless and until F&D first carries its burden to show that Cosmos had no such property interest. Showing that F&D also had an interest in the funds is not the same as showing that Cosmos had no interest, since more than one party may have an interest in the same property. Nevertheless, for the reasons stated, F&D has carried its requisite burden to show a lack of any interest held by Cosmos.

The determination of property rights is made under state law. Federal law becomes determinative only after a property right has been lawfully established under state law, in order to establish the priority of a tax lien that has been levied upon the interest held by the taxpayer. *See generally United States v. Bank of Celina*, 721 F.2d 163 (6th Cir. 1983).

The IRS simplistically argues that because the Funds represent payments under contracts between ODOT and Cosmos, and not (technically) on contracts between ODOT and F&D, that Cosmos retained a property interest in those payments under the contracts. Under this view, the alleged "property interest" springs from the right of payment under referenced contracts. The IRS argues that the property interest of Cosmos in payment under the contracts was not extinguished until April 4, 2016, when ODOT formally declared Cosmos to be in default and reassigned the remaining bonded work to F&D as surety.

However, the case on which the IRS chiefly relies, *In re Construction Alternatives*, 2 F.3d 670, 674 (6th Cir. 1993), is clearly distinguishable. In that case, the court held that the contractor had earned a right to a final progress payment because the contractor *had completed all work* and no conditions remained to be performed under the contract. In other words, the right to payment was not a contingent right based upon the anticipated performance of future work, as presented in this case, but instead was a fully vested right to payment under the contract, akin to an accounts receivable for merchandise that has already been delivered. In contrast to *Construction Alternatives*, the Funds at issue in this case were generated only *after* F&D stepped in to perform its obligations as surety. But for F&D's performance as surety under both

13

performance and payment bonds, none of the work that generated the Funds could have been completed.

Nevertheless, the IRS argues that because Cosmos nominally remained a party to the contracts, F&D cannot recover. In other words, the IRS asserts that up until April 4, 2016 when ODOT declared a default, Cosmos should be deemed to have retained some form of property interest in future payment from ODOT. Under this view, a surety that completes a public works project in conformity with its contractual obligations, after its principal makes a claim under the performance and payment bonds, should be viewed as providing no more than a type of "volunteer" assistance to the contractor, unless and until the State formally declares the contractor to be in default. The IRS posits that as long as the contracts remained in existence (prior to the declaration of default), no mere contractual claim by Cosmos against its surety for performance could extinguish the alleged "property interest" held by Cosmos.

The position of the IRS is untenable and contrary to Ohio law for two reasons. First, neither *Construction Alternatives* nor any other Ohio case authority suggests that Cosmos had any more than a contingent future interest in periodic payments for the bonded projects. If Cosmos ceased work under the contracts, ODOT would cease payment, as the contracts permitted payment only for completed work approved by ODOT – irrespective of whether or not Cosmos had committed any breach or whether it was declared to be in default. Second, when F&D stepped in as surety, it became subrogated to that future contingent right to payment. F&D's right to payment existed not only under the bonds and the Letters of Direction, but was recognized by the state

court in the Receivership proceeding. Therefore, once the right to property (payment) was actually earned and vested, it belonged to F&D and not to Cosmos.

As of September 1, 2015, Cosmos informed F&D that it could no longer proceed with work due to its precarious financial condition, and made a claim under the bonds. F&D had an obligation to its principal, Cosmos, to perform as surety based upon the submission of a valid claim. Nothing in the language of the bonds restricted that contractual obligation to the date that the principal was formally declared to be in default by ODOT, nor does Ohio law support such a proposition. *See generally, Jeffrey B. Peterson & Associates v. Dayton Metropolitan Housing Authority*, 2000 WL 1006562 at *15 (Ohio Ct. App. July 21, 2000) (rejecting argument that surety's payment was voluntary, noting that surety is primarily and jointly liable with the principal debtor under Ohio law). ODOT was well aware of the financial difficulties that Cosmos was experiencing and the risk that presented to the completion of the bonded projects. In September 2015, Cosmos and F&D reached agreement on the claim presented by Cosmos, with F&D agreeing to step in as surety to pay 100% of all costs, consistent with F&D's obligation under both performance and payment bonds, so that the work on the public projects could continue. In exchange, Cosmos executed Letters of Direction assigning Cosmos's future interest in payments under the contracts from ODOT to F&D. Following that agreement, ODOT approved Payment Applications submitted by F&D and began making periodic payments to the surety in conformity with the Letters of Direction, up until the date of the Notice of the IRS levy.

The IRS's attempt to draw an artificial distinction between F&D's performance as surety under the bonds *prior to* ODOT's declaration of default versus F&D's continued

performance under the same bonds *after* ODOT's declaration of default is neither persuasive nor relevant to the issue of whether Cosmos ever obtained, much less retained, any property interest in the Funds. The IRS's position ignores Ohio's law on subrogation, and the clear application of Ohio statutory and case law to the facts of this case. *See also generally, Aetna Cas. & Surety Co.* v. U.S., 845 F.2d 971 (Fed. Cir. 1988) (neither formal termination of contract by Government nor execution of a take-over agreement by surety is necessary for surety to qualify as a performing surety).

As previously stated, the primary case on which the IRS chiefly relies, *In re: Construction Alternatives*, is readily distinguishable. When the IRS filed tax liens against the delinquent taxpayer/contractor in that case, the contractor ("CA") sought the protection of the bankruptcy court. After the public school district and CA agreed on the amount of the final progress payment, the IRS and the surety both filed claims in the bankruptcy court. The surety argued that CA had no property interest in the final payment, but only a "legal interest," because in the surety's view, CA had failed to satisfy <u>all</u> terms of the contract by failing to pay some subcontractors, which the surety paid. Focusing on the specific contractual language at issue under Ohio law, the Sixth Circuit held that because "it is undisputed that the work on the project was complete," <u>CA owed nothing more to the school</u> under the contract, and had earned a property right to its final payment. *Id.* at 674. The appellate court held that the fact that the same payment was subject to the liens of others (namely the surety) did not nullify the contractor's vested property interest, which arose upon completion of its contracted work. "[A] tax lien can attach to a taxpayer's interest in property regardless of whether the interest is less than full ownership or is only one among several claims of

16

ownership." *Id.*, (internal quotation and citation omitted). A later unpublished case, citing *Construction Alternatives*, similarly affirmed a trial court's ruling that where it was undisputed that the contractor had completed all work, entitling it to receipt of a final payment to which an IRS lien could attach, rejecting the surety's argument that the contractor's failure to pay two subcontractors forfeited the contractor's property interest, or that the surety's post-levy payment created a superior lien. *See Wayne County Bd. of County Com'rs v. Mendel*, 22 Fed. App. 488, 491 (6th Cir. 2001).[10] It is worth noting that the lower court in *Mendel* also pointed out that no mechanic's liens had been filed under R.C. § 1311.26,[11] and that no impediment existed under the language of the contract that precluded that contractor's right to the final payment. *See id.*, 2000 WL 1009482 (N.D. Ohio May 30, 2000).

Just as the prior completion of all work by the contractor was critical to the holdings in *Construction Alternatives* and *Mendel*, the different order of events in this case (as well as different contractual language and application of state and federal law) mandates a different outcome. Unlike *Construction Alternatives*, in which work had been completed and the right to final payment had fully accrued, here Cosmos had not even begun – and had certainly not completed - <u>any</u> of the work that formed the basis for the post-September 2015 Pay Applications submitted by F&D that generated the Funds.[12] In fact, beginning on September 1, 2015 through October 26, 2015 when the IRS served notice of its levy, ODOT was making periodic progress payments to F&D in conformity with the Letters of Direction. (*See e.g.*, Doc. 43-4 at 910, ¶¶ 26-27 (attesting

---

[10]The timing of events in the unpublished *Mendel* case is somewhat ambiguous, and neither the trial court nor appellate courts discussed the specifics of the contract at issue in that case.

[11]Similarly, no mechanic's liens had been filed in the *Construction Alternatives* case.

[12]As discussed below, the undersigned recognizes a possible exception for Retained Funds correlated with Pay Applications submitted by Cosmos prior to September 1, 2015.

to receipt of some payments from ODOT for Payment Applications submitted by F&D prior to October 26, 2015)). And beginning on September 1, 2015, it was the surety, and not Cosmos, that provided 100% of the financing and ensured the completion of the bonded work.

The Letters of Direction confirmed that any right to future payment for contracted work performed through F&D's funding accrued to F&D, in its subrogated role as surety, and not to Cosmos. On October 2, 2015, an Ohio court ratified the validity of the parties' agreement that the contingent/future right to payment under the ODOT projects belonged to F&D, by expressly stating that the rights of the Receiver were subject to the existing rights of F&D in conformity with the Letters of Direction.

The assignment of the sole right to payment for future performance of the bonded work occurred in September 2015, well before the IRS served its Notice of Levy upon ODOT. Although the undersigned has concluded that any right to payment under the ODOT contracts was only a contingent future interest (as opposed to a vested property interest for completed work), that limited interest belonged to F&D alone, as a performing surety, after September 1, 2015. Case law confirms that Ohio law upholds the subrogation rights of performing sureties under both equitable and legal principles. *See American Ins. Co. v. Ohio Bur. of Workers Comp.*, 62 Ohio App.3d 921, 923-925, 577 N.E.2d 756, 758-759 (Ohio Ct. App. 1991) (holding that under Ohio law, principles of subrogation should be applied broadly and "invoked where necessary to prevent injustice," noting construction cases in which "the surety will be subrogated to the principal's right to payment by the owner upon completion of the project").

The IRS has failed to show, and cannot show, that Cosmos had any interest in Funds generated for work that Cosmos had not yet begun to perform prior to enlisting the assistance of its surety. The fact that Cosmos's name remained on the contracts from September 1, 2015 until April 4, 2016 simply did not imbue Cosmos with any present property interest in the Funds, in part because the contracts expressly conditioned periodic payments by ODOT upon the completion of work and approval of a Payment Application. The determination that the nature of Cosmos's interest was an expectancy interest, rather than a vested property right to future payment for work yet to be performed, and that such interest was lawfully assigned to F&D as surety in September 2015 under the bonds and the Letters of Direction, is consistent with basic principles of subrogation under Ohio law. *See e.g. Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 83 S.Ct. 232 (1962) (holding that surety who paid laborers and materialmen under payment bond had property interest in entire retained fund held back by government under contract under doctrine of equitable subrogation, and that debtor in bankruptcy held no property interest in retained fund); *see also generally American Ins. Co. v. Ohio Bureau of Workers' Comp*, 62 Ohio App. 3d 921, 577 N.E.2d 756 (explaining principles of subrogation under Ohio law); *Euclid Nat'l Bank v. Cenci Excavating Co.*, 1978 WL 215865, at *8 (Ohio App 1978) (citing *Perlman* and confirming doctrine of equitable subrogation applies in Ohio for performing surety). Thus, as of September 1, 2015, F&D possessed all future rights to payment, taking steps (the Letters of Direction) to notify ODOT of the valid assignment by Cosmos of that contingent right, prior to ODOT's receipt of notice of the IRS levy.

### D. Cosmos Had No Property Interest in Retained Payments Prior to September 1, 2015

If the whole of the Funds on deposit with this Court were payable as the result of work performed after F&D began performing as surety and provided 100% of all funding, and after Cosmos executed the Letters of Direction, then no further analysis would be required. For the reasons explained above, Cosmos never acquired any property interest in those Funds under state law, whereas F&D has adequately proven its property rights to the whole of the Funds based upon its performance as surety.

However, an issue of fact and of law remains concerning funds withheld by ODOT from Payment Applications submitted by Cosmos prior to September 1, 2015 (the "Retained Payments").[13] The Retained Payments were withheld both under Ohio law for the thirteen mechanic's liens that various subcontractors had submitted to ODOT, and under the federal Davis-Bacon Act for payment of fringe benefits. (*See* Doc. 43-5 at 5, ¶16, acknowledging existence of Retained Payments "that Cosmos claimed were due and owing from ODOT"). The Retained Payments were retained and segregated by ODOT prior to September 1, 2015, and continued to be held by ODOT on October 26, 2015 when the IRS served notice of its levy. Because ODOT segregated the Retained Payments from the amount owed to Cosmos on work that already had been completed by Cosmos, before Cosmos made any request for assistance from its surety, a threshold issue arises concerning whether Cosmos itself acquired some form of property interest in the Retained Payments based upon its

---

[13]An ambiguity is evident from the arguments of the parties. On the one hand, F&D argues that "[b]y the time ODOT received the IRS levies [on October 26, 2015], the project funds generated for work before September 1, 2015 *had already been released* to F&D." (Doc. 43 at 12, emphasis added). On the other hand, much of F&D's argument is that it is entitled to the Funds on deposit because those Funds represent reimbursement to F&D of payments of debts for which ODOT had Retained Payments.

completion of the work. *See State of Ohio ex rel. Star Supply, Div. of Start Indus., Inc. v. City of Greenfield*, 528 F. Supp. 955, 958 (S.D. Ohio 1981) (holding that the "threshold question…is whether the contractor had any property interest in the fund retained by the City of Greenfield").

ODOT would not release either the Retained Payments or new payments on Pay Applications to F&D until the surety satisfied all debts for which ODOT had Retained Payments. (*See* Doc. 43-2 at 5 ¶27, Affidavit of Gregory Kilburn, explaining that ODOT would release funds to F&D upon proof that F&D had advanced funds to pay claims, satisfy liens, or pay fringe benefits; Doc. 43-4 at 8, ¶24, Affidavit of Jeanie McNulty, stating that ODOT withheld the release of funds on F&D's Pay Application No. 7 on Project 14-0182 due to Cosmos's earlier failure to pay fringe benefits under the Davis-Bacon Act; *see also generally* Doc. 43-1, Schuler deposition).

I conclude as a matter of law that, notwithstanding the fact that the work that caused ODOT to segregate the Retained Payments was completed prior to the involvement of the surety, Cosmos never acquired any property interest in the Retained Payments to which an IRS lien or levy could have attached. In other words, the undersigned agrees with F&D's alternative theory that it is entitled to an award of the Funds based upon its later payment, as surety, of the outstanding liens and fringe benefits claims.

F&D argues that Cosmos did not acquire any property interest in the Retained Payments under the express language of the contract (including the incorporated rider of the Davis-Bacon Act) and Ohio Revised Code §1311.28. F&D further contends that it is entitled to the Retained Payments because F&D paid out more than $700,000 in

fringe benefits claims,[14] as well as more than $500,000 in mechanic's liens.  I agree with both contentions.

The IRS mischaracterizes F&D's argument concerning the Retained Payments as "essentially" an argument that ODOT held the Retained Payments "in trust" for the benefit of unpaid laborers and suppliers.   Under this theory, the IRS presumes that Cosmos had earned a property right to the Retained Payments, but that ODOT nevertheless held that property in trust for other lienholders against the same property. Building on this mischaracterization of F&D's argument, the IRS again relies on *Construction Alternatives* for its rejection of a surety's argument that the school district in that case was holding funds as a trustee for unpaid suppliers and contractors.  There, the Sixth Circuit held that no Ohio law creates a constructive trust in favor of unpaid suppliers or contractors, and further determined that no trust was created (by the express contractual language or otherwise) that would preclude the contractor's entitlement to its final progress payment for the completed work.[15]  The IRS argues that "a state-law trust favoring what are in substance mechanic[']s lien claims over federal tax liens would conflict both with the plainly controlling federal provision giving more limited priority to mechanics liens over federal tax liens, as well as the strong policy of

---

[14]Considering that the amount that F&D paid out exceeds the amount on deposit with this Court, it is obvious that ODOT did not withhold $700,000.  There is conflicting evidence concerning the precise amount of Retained Payments that were withheld under the Davis-Bacon Act, but the IRS does not dispute the amount that F&D claims to have paid out.

[15]The IRS argues that the Sixth Circuit's holding that Ohio law does not create a trust should be read as a blanket rule that applies even when funds are expressly retained under R.C. §1311.28.  The IRS concedes that the school did not retain funds under that provision in *Construction Alternatives*, but suggests that "if the judges believed that [§1311.28 could] …create a trust, the opinion would not have said flatly that Ohio law did not create a trust," but instead would have clarified the possibility of an exception under §1311.28.  This is nonsense.  Judicial opinions are written based on the facts and legal arguments presented in each case.  The IRS's theory as to what the court might have held had it been presented with different facts and different legal arguments is pure speculation, and irrelevant since F&D does not argue that a "trust" exists, but instead that no property right ever arose in favor of Cosmos for the Retained Payments under Ohio law.

22

federal law to assure that payroll taxes are given priority even when no federal lien exists." (Doc. 45-1 at 26).

The fatal flaw to the IRS's argument is that F&D has never advocated the "trust" theory relied upon by the surety in *Construction Alternatives*, but instead proceeds under an entirely different (and more persuasive) legal theory that Cosmos never acquired any property interest in the Retained Funds.[16]  Not only does the IRS significantly mischaracterize F&D's legal theory, but *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132 (1962) is controlling with regard to the Retained Payments in this case.  In *Construction Alternatives*, the court pointed out that because the subcontractors had <u>not</u> filed mechanic's liens under Ohio's statute, the school district "was not required or permitted to retain any money…" *Id.* at 676.  By contrast, in *Pearlman*, the U.S. Supreme Court explained that where the contract permitted the owner to retain a portion of the amount due to the contractor to cover payments to suppliers and subcontractors, and the owner withheld those funds, the contractor acquired no property interest in those funds, but instead the retained funds belonged to the surety.  Likewise here, ODOT was both contractually and legally required, under Ohio and federal law, to withhold the Retained Payments.  Because ODOT complied with its legal obligations and actually did withhold those Retained Payments, Cosmos had no property interest in those funds.

Aside from the distinguishable facts of *Construction Alternatives* and more persuasive authority of *Pearlman*, multiple cases support F&D's position that Cosmos

---

[16]Even if F&D had argued a "trust" theory, at least one Sixth Circuit case would appear to support that theory based upon the express language of the contracts at issue in this case.  *See Federal Ins. Co. v. Fifth Third Bank*, 867 F.2d 330 (6th Cir. 1969).  Again, however, since F&D does not argue the theory, there is no need for this Court to more closely examine it.

had no property interest in the Retained Payments under Ohio law to which any federal tax lien or levy could attach. *See, e.g., In re Design Intern. Ohio Corp.*, Case No. 1.-92-00642, 1994 WL 912422 (Bankruptcy Court, S.D. Ohio Sept. 14, 1994) (distinguishing *Construction Alternatives,* holding that where contract expressly provided for retainage, contractor never acquired property interest and funds were payable outside of bankruptcy estate to surety who paid for materials); *Winzeler Excavating Co. v. Brock*, 694 F. Supp. 362, 366 (N.D. Ohio 1988)(suggesting in dictum that contractor had no property interest in portion of funds retained under the Davis-Bacon Act that would support a due process claim, but holding that "assuming arguendo" that contractor had any such property right, theoretical due process claim would not lie because administrative procedures were adequate); *Star Supply*, 528 F. Supp. at 958-959 (contractor had no property interest in retained funds up to amount paid out to subcontractor, despite having a property interest in small portion of retained funds that <u>exceeded</u> amount properly withheld under R.C. §1331.28, so that IRS lien could attach to only portion of excess retained funds); *accord Capital Indemnity Corp. v. United States,* 452 F.3d 428 (5th Cir. 2006) (holding that where city had contractual right to withhold amounts necessary to satisfy subcontractor and suppliers' claims, the retained funds are not the contractor's property, and federal government's tax lien did not attach).

There is no dispute that ODOT was legally required under Ohio law to retain such portion of any amount "due and unpaid" to Cosmos as to which it had received affidavits. *See* R.C. § 1311.28. It also was legally required to withhold contributions for fringe benefits under the Davis-Bacon Act. The cases cited above confirm that Cosmos

did not ever acquire any property interest in the Retained Payments, since ODOT withheld no more than mandated by Ohio law and/or the Davis-Bacon Act.

In addition to concluding that Cosmos had no property interest in the Retained Payments, the undersigned concludes that F&D has demonstrated its entitlement to reimbursement of its payments of Cosmos's debts for the mechanic's liens and fringe benefits that the Retained Payments represent. Therefore, although the undersigned previously concluded that F&D is entitled to payment of the Funds as a result of its post-September 1, 2015 funding for all work on Payment Applications that generated the Funds, the undersigned alternatively and additionally concludes that the Funds should be paid out to F&D as reimbursement of its payments of the debts that generated the Retained Payments.

### E.    Alternative Arguments Regarding Lien Priority

Because the IRS loses on the threshold questions of whether Cosmos ever acquired any property interests in the Funds or Retained Payments, there was no taxpayer property to which the IRS liens or levy could attach. Therefore, there is no need to review the parties' alternative arguments concerning whether the IRS or F&D would hold a superior lien interest under 26 U.S.C. § 6323. *But see generally, Glenn v. American Sur. Co.,* 160 F.2d 977 (6th Cir. 1947) (holding that surety had right to retained payments, plus interest; in part because it had priority over tax lien).

### IV.    Conclusion and Recommendation

Because F&D has carried its burden of proof to establish that the IRS improperly levied against Funds that belong exclusively to F&D, and the IRS has failed to carry its burden to establish a nexus between the Funds and any property interest that was held

by Cosmos, F&D is entitled to disbursement of the Funds as a matter of law. Accordingly, **IT IS RECOMMENDED THAT** F&D's motion for summary judgment (Doc. 43) be **GRANTED**, and that the cross-motion of the IRS for summary judgment (Doc. 45) be **DENIED**.   **IT IS FURTHER RECOMMENDED THAT** if this R&R is adopted by the Court, the Funds on deposit with this Court shall be released in their entirety to F&D, and this case should be closed.

*s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

FIDELITY AND DEPOSIT COMPANY
OF MARYLAND,

      Plaintiff,

  v.

OHIO DEPARTMENT OF
TRANSPORTATION, et al.,

     Defendants.

Case No. 1:16-cv-284

Dlott, J.
Bowman, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).